IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| MICHAEL MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 10 C 6533 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| SHERIFF JOHN E. ZARUBA, UNKNOWN DUPAGE COUNTY DEPUTY SHERIFFS, DEPUTY SHERIFF USHMAN, JAMES CORCORAN, and DUPAGE COUNTY, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Miller ("Miller") filed suit against Sheriff John Zaruba ("Zaruba"), unknown DuPage County Deputy Sheriffs ("Deputy Sheriffs"), Deputy Sheriff Ushman ("Ushman"), James Corcoran ("Corcoran"), and DuPage County (together "Defendants"). Specifically, Count I alleges that Ushman failed to protect Miller in violation of 42 U.S.C. § 1983 ("§ 1983"); Count II alleges that Ushman failed to intervene in violation of § 1983; Count III alleges that Corcoran acted with deliberate indifference to Miller's serious medical needs in violation of § 1983; Count IV alleges a *Monell* claim against Zaruba; Count V alleges that Ushman and Corcoran negligently inflicted emotional distress in violation of Illinois law; Count VI alleges that Ushman and Corcoran intentionally inflicted emotional distress in violation of Illinois law; Count VII alleges that Zaruba breached his duty to hire, train, and supervise his employees in violation of Illinois law 730 ILCS 125/3; Count VIII alleges a *respondeat superior* claim against Zaruba; Count IX alleges an indemnification claim against Zaruba; and Count X alleges an indemnification claim against DuPage County.

Zaruba moves to dismiss Counts V, VI, VII, and X as well as Miller's request for punitive damages against him; Ushman moves to dismiss Count V; Corcoran moves to dismiss Counts V and VI; and DuPage County moves to dismiss itself as a party. For the following reasons, the Court grants in part and denies in part Defendants's Motions to Dismiss: the Court grants Ushman's Motion to Dismiss Count V; grants Corcoran's Motion to Dismiss Counts V and VI; grants Zaruba's Motion to Dismiss Counts VI and VII; grants in part and denies in part Zaruba's Motion to Dismiss Count VIII; denies Zaruba's Motion to Dismiss Count V and denies Zaruba and DuPage County's Motion to Dismiss Count X.

## STATEMENT OF FACTS

The following facts are taken from Miller's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Miller was arrested by Villa Park, Illinois police officers on June 30, 2009 and taken to the DuPage County Jail ("Jail") for violating an order of protection forbidding him from having contact with his wife. (Compl. ¶ 10.) Miller was unable to pay bond and was subsequently detained until November 17, 2010. (*Id*.)

Miller was originally housed in the misdemeanor pod of the Jail, where he used the telephones to call his estranged wife. (*Id*. ¶¶ 11-12.) After a July 22, 2009 hearing regarding a charge of violating the order of protection, Miller was placed in administrative segregation in the psychiatric ward. (*Id*. ¶¶ 13-14.) Miller never received psychiatric treatment nor were there any incidents indicating that Miller should be housed in the psychiatric ward. (*Id*. ¶ 16.)

Stuart Rothberg ("Rothberg") was assigned to a cell adjacent to Miller's at the end of

September 2009 in the psychiatric ward. (*Id*. ¶ 17.) Miller believed that Rothberg suffered from psychiatric illness in September 2009 and that he had a history of violent behavior. (*Id*. ¶¶ 18-19.) Rothberg had been involved in several violent incidents involving Jail inmates and staff and was known by Jail staff to be dangerous to others. (*Id*. ¶ 19.) Rothberg was required to wear a yellow wristband at all times indicating the need to keep him segregated. (*Id*. ¶ 20.) Miller had no contact with Rothberg and was never in Rothberg's presence without Jail supervision prior to October 23, 2009. (*Id*. ¶ 21.)

On Friday October 23, 2009, Miller and Rothberg, along with other inmates from their pod, were escorted to the gym by an unknown Deputy Sheriff and locked in. (*Id*. ¶ 22.) No Deputy Sheriffs were present in the gym, though they were able to monitor and observe the inmates from a control booth with a large window and video feed. (*Id*.) This was the first time that Miller and Rothberg were in the gym together and, to the best of Miller's knowledge, the first time that Rothberg was allowed in the gym with other inmates. (*Id*. ¶ 23.)

While in the gym, Miller noticed Rothberg "acting crazy" and eating dust and wrappers from the floor. (*Id*. ¶ 24.) Miller approached the gym's metal intercom and spoke with Ushman, who was in the control booth, about Rothberg's behavior. (*Id*. ¶ 25.) While Miller was speaking with Ushman, Rothberg leapt from a weightlifting bench onto Miller's back, driving Miller's head into the metal intercom and rendering Miller unconscious. (*Id*. ¶ 26.) Rothberg then punched and kicked Miller, lacerating Miller's head and fracturing several of Miller's teeth. (*Id*. ¶ 27.)

Ushman called for supervisors, escorts, and nurses to respond. (*Id*. ¶ 28.) Miller was taken, unconscious, to the Jail infirmary where he was treated by Corcoran, the Jail's chief psychiatrist. (*Id*. ¶ 29.) Corcoran noted in Miller's medical file that there were contusions and swelling on both

3

sides of Miller's nose and that Miller complained that his nose was broken. (*Id*. ¶ 30.)

Corcoran gave Miller Tylenol and a five-day prescription for Motrin. (*Id*. ¶ 32.) Miller showered and returned to his cell without further medical care. (*Id*.)

On Monday, October 26, 2009, Miller was moved from the psychiatric ward to receiving for observation, neurological checks, and facial x-rays. (*Id*. ¶ 33.)

Ushman filed a report noting that Miller chipped a tooth and that the gym required "significant biological cleanup." (*Id*. ¶ 31.)

As a result of the October 23rd incident, Miller suffers epilepsy, "loss of the ability to accommodate in his right eye," Ellis class IV fractures to several teeth, anxiety, headaches, and motion sickness. (*Id*. ¶ 34.) Miller also claims to suffer from post-traumatic stress disorder. (*Id*. ¶ 65.)

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise

4

to an entitlement to relief.  *Id.*  A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *See id.* at 1949.

## DISCUSSION

**I.     Counts V, VI, and VIII**

Ushman moves to dismiss Count V, claiming that he is immune from liability pursuant to 745 ILCS 10/4-105; Corcoran moves to dismiss Counts V and VI for failure to state a claim against him.  While Counts V and VI are only brought against Ushman and Corcoran, Zaruba moves to dismiss these Counts to the extent that they are alleged against him through Miller's *respondeat superior* claim in Count VIII.

**A.     Negligent Infliction of Emotional Distress**

To succeed on a negligent infliction of emotional distress claim, Miller must show that: (1) the defendants owed plaintiff a duty; (2) the defendants breached this duty; and (3) this breach proximately caused his injury.  *See Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000).  Direct victims of negligent infliction of emotional distress are "the persons that the negligent conduct has directly affected; they are the ones that are actually physically injured by the defendant's negligent conduct.  To fall in this category the plaintiff must suffer some contemporaneous physical contact that caused the emotional distress."  *Barnes v. Anyanwu*, 391 Fed. App'x 549, 552 (7th Cir. 2010).  "[I]n order to recover for negligent infliction of emotional distress under Illinois law, a direct victim must show he suffered a physical injury or impact."  *Id.* at 554.

Here, Miller claims that Ushman breached his duty by allowing Rothberg to beat him in the gym, and that Miller suffered epilepsy, anxiety, headaches, motion sickness, and post-traumatic

5

stress as a result. Illinois law holds that public employees are not liable for injuries "proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody." 745 ILCS 10/4-105. This defense, however, is unavailing because Miller claims his injuries stem from the physical beating that he suffered in the gym; he is not claiming that he suffered emotional distress from Ushman's failure to provide medical assistance.

Nonetheless, Miller's formulaic allegations against Ushman fail because he does not allege that Ushman was aware of Rothberg's previous violent behavior or that Ushman was aware that Rothberg was in the gym. Miller instead claims that an unknown Deputy Sheriff escorted him and Rothberg to the gym and only notes Ushman's involvement as calling for assistance when he saw Miller being attacked. Therefore, while 745 ILCS 10/4-105 does not provide immunity to Ushman on this Count, the Court finds that Miller has not pled that Ushman individually breached any duty owed to Miller and, as such, grants Ushman's Motion to Dismiss Count V. Moreover, the emotional distress that Miller complains of—anxiety, headaches, motion sickness—"fail[s] to meet the high bar of [negligent infliction of emotional distress] impact." *Michalezewski v. CSX Transp., Inc.*, 2007 WL 2875627 at *7 (N.D. Ill. Sept. 30, 2007) (Coar, J.) (noting that "sleeplessness, discomfort, fear, and regret are exactly the sorts of intermediate effects that consistently fail to" state a negligent infliction of emotional distress claim); *see Robbins v. Kass*, 516 N.E.2d 1023, 1027 (Ill. App. Ct. 1987) (finding "crying, sleeplessness, increased migraine headaches and upset feelings" insufficient to state a negligent infliction of emotional distress claim).

Miller's attempts to use the beating that he suffered as evidence of a direct injury against Corcoran are similarly unavailing. Corcoran took no part in the beating and Miller does not claim that any additional physical injuries that he suffered were due to Corcoran's allegedly incomplete

medical care. *See Cleveland v. Rotman*, 297 F.3d 569, 574 (7th Cir. 2002) (denying negligent infliction of emotional distress claim where plaintiff "did not allege that [defendant's] negligence caused [plaintiff] a physical injury that directly caused his emotional distress."). Therefore, the emotional distress that Miller claims to have suffered as a result—including post-traumatic stress—was not due to Corcoran's alleged negligence. *See, e.g., Michalezewski*, 2007 WL 2875627 at *8 ("Post-traumatic stress disorder, whether severe or not, is the type of purely psychological damage" that fails to meet the "physical injury" requirement of a negligent infliction of emotional distress claim). The Court grants Corcoran's Motion to Dismiss Count V.

While Miller fails to state a negligence claim against Ushman or Corcoran, he does allege that unknown Deputy Sheriffs negligently allowed Rothberg—an inmate with a history of violent behavior who was generally kept in segregation—to enter the gym unsupervised while other inmates were present. Miller also alleges that Rothberg's presence in the gym led directly to Miller's injuries. Illinois law holds sheriffs "liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." 55 ILCS 5/3-6016; *see, e.g., Lewis v. Cook County Corrs. Officers*, 2002 WL 31133175 at *1 (N.D. Ill. Jul. 19, 2002) (Gottshcall, J.) (denying motion to dismiss *respondeat superior* claim against sheriff because "Illinois law is clear that a sheriff is vicariously liable for the negligent acts of his subordinates."). Miller has therefore stated a *respondeat superior* claim against Zaruba regarding the allegedly negligent behavior of the Deputy Sheriffs.

As such, the Court grants Ushman and Corcoran's Motions to Dismiss Count V and denies Zaruba's Motion to Dismiss Count VIII to the extent that it relates to the negligent infliction of emotional distress alleged in Count V.

### B. Intentional Infliction of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, Miller must show that: (1) the Defendants's conduct was extreme and outrageous; (2) the Defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the Defendants's conduct actually caused severe emotional distress. *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 866 (Ill. App. Ct. 2000). Such a claim is actionable only if the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (Ill. 1976).

Here, Miller has not pled facts demonstrating that Corcoran's conduct was intentional or extreme and outrageous. In fact, the facts pled—that Corcoran treated Miller, provided him with medication, and filled out a medical report (*Id.* ¶¶ 30-32)—indicate that Corcoran acted reasonably. Moreover, as discussed above, Miller does not demonstrate that Corcoran's conduct caused severe emotional distress. Therefore, Miller fails to state a claim of intentional infliction of emotional distress against Corcoran and the Court grants Corcoran's Motions to Dismiss Count VI.

While sheriffs may be liable for the intentional acts of their subordinates, Miller does not plead facts demonstrating that any of the Deputy Sheriffs acted in an extreme or outrageous manner. *See Brown v. King*, 767 N.E.2d 357, 360 (Ill. App. Ct. 2001) (finding that a sheriff may be liable for the intentional acts of his employees under traditional notions of *respondeat superior*); *but see Payne for Hicks v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998) (holding that sheriff was not vicariously liable under state law because he "is immune under the provisions of the Illinois Tort Immunity Act" 745 ILCS 10/2-204). Nor does Miller plead facts demonstrating that the Deputy Sheriffs acted intentionally when they allowed Rothberg into the gym. As such, even if Zaruba is not protected

8

under the Illinois Tort Immunity Act, the Court finds that he is not liable under *respondeat superior* for any allegations of intentional infliction of emotional distress because Miller has not alleged extreme and outrageous behavior. The Court grants Zaruba's Motion to Dismiss Count VIII to the extent that it attempts to hold him accountable for the intentional infliction of emotional distress alleged in Count VI.

The Court reminds Miller that, regarding Count VIII, "*Monell* and a host of later cases firmly establish that there is no *respondeat superior* liability under § 1983." *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 637 (7th Cir. 2009) (citation omitted). The Court also clarifies that Miller may not seek punitive damages against Zaruba in his official capacity. *See, e.g., Holly v. City of Naperville*, 571 F. Supp. 668, 673 (N.D. Ill. 1983) (granting motion to dismiss § 1983 punitive damages claim against individual defendants to the extent they were sued in their official capacities).

## II. Count VII

Zaruba moves to dismiss Count VII, claiming that he is immune from liability pursuant to the Local Governmental and Governmental Employees Tort Immunity Act ("Act"), 745 ILCS 10/4-103. The Act holds, in relevant part, that public employees are not liable for a "failure to provide sufficient equipment, personnel, supervision or facilities" within a jail or detention facility. 745 ILCS 10/4-103; *see Payne for Hicks*, 161 F.3d at 1046 (noting that immunity under the Act "has been held to be absolute" but does not protect a sheriff "from allegations that he acted in willful and wanton manner.").

Here, Miller alleges that Zaruba breached his duties to hire, train, and supervise his employees and failed to "provide adequate staffing at the DuPage County Jail." (Compl. ¶¶ 68-71.) To the extent that Miller is alleging a violation of 730 ILCS 125/3 for Zaruba's failure to provide

9

adequate staffing or to supervise his staff, those claims are explicitly barred by the Act. Zaruba, however, may be held liable for allegations that he failed to properly train his employees. 730 ILCS 125/3 (the Sheriff is "responsible for the hiring and training of all personnel necessary to operate and maintain the jail."). Nonetheless, Miller has not pled facts indicating that the Deputy Sheriffs's training was inadequate, that Zaruba was aware that the training procedures in place were inadequate, or that Miller's injuries were the result of a failure to adequately train the Deputy Sheriffs. Therefore, Miller has failed to state a claim and the Court grants Zaruba's Motion to Dismiss Count VII.

## III. Count X

DuPage County challenges its inclusion in the Complaint, specifically in Count X, which alleges an indemnification claim against it. While a county is required to pay for a judgment entered against the county sheriff in his official capacity, *Carver v. Sheriff of LaSalle County, Ill.*, 324 F.3d 947, 947–48 (7th Cir. 2003), here Miller brings suit against Ushman and Zaruba in both their individual and official capacities. "[T]he majority of courts that have considered the issue have determined that there is no reason why a plaintiff should not be permitted to proceed with an indemnification claim under [745 ILCS] 10/9–102 before his actions against municipal employees are final." *Griffin v. Meagher*, 2009 WL 5174684 at *5 (N.D.Ill. Dec. 21, 2009) (Dow, J.) (collecting cases). As such, the Court denies DuPage County's attempt to remove itself from the case and denies Defendants's Motion to Dismiss Count X. *See, e.g., Garrett v. Dart*, 2010 WL 2136670 at *3 n.2 (N.D. Ill. May 26, 2010) (Dow, J.) (noting that "if Plaintiff's *Monell* claim survives, both the Sheriff and Cook County are necessary parties.").

**CONCLUSION AND ORDER**

For the reasons stated, the Court grants Ushman's Motion to Dismiss Count V; grants Corcoran's Motion to Dismiss Counts V and VI; grants Zaruba's Motion to Dismiss Counts VI and VII; grants in part and denies in part Zaruba's Motion to Dismiss Count VIII; denies Zaruba's Motion to Dismiss Count V and denies Zaruba and DuPage County's Motion to Dismiss Count X.

So ordered.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 28, 2011